UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARLA E. MANN,

                Plaintiff,

vs.                                                    Case No.  3:04-cv-513-J-32MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

                Defendant.
_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS CAUSE** is before the Court on Plaintiff Marla E. Mann's Complaint (Doc.

No. 1), seeking judicial review of an administrative decision denying her application for

Social Security benefits.[1]  The Court has thoroughly reviewed the record, the briefs and

the applicable law.  For the reasons set forth herein, the Commissioner's decision is

**AFFIRMED**.

## I.      PROCEDURAL HISTORY

Plaintiff applied for a period of disability and disability insurance benefits (DIB) on

June 26, 2001, alleging she became unable to work on December 31, 1999.  (Tr. 45-

48).  The Social Security Administration denied Plaintiff's application initially and upon

reconsideration.  (Tr. 24-28, 31-33).  Plaintiff filed a timely request for a hearing on the

_____

[1]The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  <u>See</u> Doc. No.  13.

matter.  Plaintiff's request was granted and a hearing was conducted by an administrative law judge ("ALJ") on August 5, 2003.  (Tr. 266-305).

The ALJ issued a decision on September 19, 2003, concluding Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 17-22).  Pursuant to Sections 216(i) and 223, respectively, of the Social Security Act, the ALJ further concluded Plaintiff was not entitled to a period of disability or DIB.  Id.  Plaintiff filed a timely request for review by the Appeals Council which was denied on April 21, 2004.  (Tr. 5-7).  Consequently, the ALJ's September 19, 2003 decision became the final decision of the Commissioner.  See 20 C.F.R. §§ 404.955, 404.981.  Plaintiff subsequently filed a timely complaint in the United States District Court on June 23, 2004.  See Doc. No. 1.

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since December 31, 1999, due to Hepatitis C and subsequent treatment, fatigue, muscle pain, insomnia, headaches, depression and an inability to concentrate.

### B.    Summary of Evidence Before the ALJ

Plaintiff was born September 16, 1961, and was 42 years of age at the time the ALJ conducted the administrative hearing.  (Tr. 18, 46, 272).  Plaintiff possesses a high school equivalent education and has completed one year of college courses.  (Tr. 282).  Her past work includes employment as a sales clerk, a rental agent and owner of a party supply rental company.  (Tr. 284-287).

In sum, the record reveals the following relevant evidence.  Plaintiff has a

significant history of Hepatitis C, which was initially diagnosed in 1985.  Plaintiff began

treatment with Rachel Milkman Solomon, M.D. ("Dr. Solomon"), an internist, on

September 23, 2002, after complaining of pain, discomfort in her joints, carpel tunnel

syndrome, continual ringing in her ears and urinary tract symptoms.  (Tr. 187).  Upon

conducting a physical examination, Dr. Solomon noted that Plaintiff experienced

"marked pain on palpation of the left [wrist]" as well as positive Phalen and Tinel signs.

Id.  Dr. Solomon further noted Plaintiff suffered a urinary tract infection and prescribed

Cipro.  Id.

Subsequent patient notes reveal Dr. Solomon referred Plaintiff to aquatic

physical therapy for treatment of arm and leg pain secondary to arthralgic Hepatitis C.

(Tr. 248).  Based upon the record, it is unclear whether Plaintiff completed the

recommended therapy and to what extent, if any, the treatment affected Plaintiff's pain.

(Tr. 245-248).

On March 24, 2003, Plaintiff sought treatment for lower back pain.  Dr. Solomon

prescribed Bextra along with Nexium and advised Plaintiff to return for treatment if she

continued to experience pain.  (Tr. 241).  In April 2003, an MRI of Plaintiff's lumbar

spine revealed that she experienced disc dessication and disc-space narrowing at L3

through L5; mild scoliosis; mild degenerative changes; and a questionable cyst within

the upper pole of her left kidney.  (Tr. 234).  On May 23, 2003, Plaintiff returned to Dr.

Solomon to discuss her pain medication.  (Tr. 239).  Plaintiff reported that Lortab, if

taken twice daily, provided some relief of her pain.  Id.  After conducting a physical

examination, Dr. Solomon noted Plaintiff was able to stand and walk without difficulty. (Tr. 239).

Dr. Solomon completed a "Residual Functional Capacity Questionnaire" on June 19, 2003, stating Plaintiff's ability to perform work related activities was limited by severe pain, numbness, muscle weakness and fatigue.  (Tr. 235-238).  Specifically, Dr. Solomon opined that Plaintiff could: (1) sit for 30 minutes; (2) walk/stand for 10 minutes; (3) work 4 hours daily; (5) occasionally lift up to 20 pounds; and (6) occasionally carry up to 10 pounds.  (Tr. 235).  Dr. Solomon further opined that, with some limitations, Plaintiff could use her hands for repetitive actions such as simple grasping, pushing and pulling; however, Plaintiff could not perform activities requiring fine manipulation.  (Tr. 236).  Additionally, Dr. Solomon opined that Plaintiff could occasionally bend, crawl, climb and reach but could not squat, stoop, crouch or kneel.  Id.  In the "Remarks" section of the questionnaire, Dr. Solomon stated: "Patient can walk and move objects but only for short periods (<10 min) of time.  Please note when patient does physical activity she requires the next day to rest in order to regain her strength."  (Tr. 238).

On March 28, 2002, in response to her complaints of depression, Plaintiff underwent a psychiatric evaluation conducted by Luis Torres, M.D. ("Dr. Torres"), a psychiatrist.  Based upon his evaluation, Dr. Torres opined Plaintiff suffered "major depressive disorder, single episode, moderate." (Tr. 204).  In making the assessment, Dr. Torres noted Plaintiff appeared underweight, clean and well-groomed.  (Tr. 202). Plaintiff maintained good-eye contact and appeared alert, friendly and cooperative during the evaluation.  Id.  Dr. Torres further noted Plaintiff displayed a depressed affect

as well as a sad mood.  Id.  Additionally, Dr. Torres rated Plaintiff's concentration, judgment and insight as fair.  (Tr. 203).

Subsequent progress notes by Dr. Torres indicate Plaintiff continued treatment through July 2003.  During that time, Plaintiff reported varying degrees of depression accompanied by persistent anxiety, recurrent panic attacks and insomnia.  The notes further indicate Plaintiff was treated with adjusted doses of Wellbutrin, Ambien, Xanax and Lexapro.

On June 27, 2003, Dr. Torres completed a Psychiatric Documentation Form, indicating Plaintiff's affective disorder of depressive syndrome caused no functional limitation in her activities of daily living.  (Tr. 257).  Dr. Torres further indicated the condition caused mild limitations in Plaintiff's ability to maintain social functioning as well as her ability to maintain concentration, persistence or pace.  Id.  Additionally, Dr. Torres indicated Plaintiff experienced one or two episodes of decompensation, each of extended duration.  Id.  With respect to Plaintiff's anxiety disorder, Dr. Torres opined Plaintiff experienced recurrent panic attacks which caused mild to moderate functional limitations.  (Tr. 259).

At the request of the State Office of Disability Determination, Plaintiff underwent a medical examination conducted by Charles Grant, M.D. ("Dr. Grant") and a psychological evaluation conducted by Loren M. Johnson ("Johnson"), a licensed mental health counselor, and David M. Zelbovitz ("Zelbovitz"), a licensed psychologist. In his report, dated February 18, 2002, Dr. Grant noted Plaintiff's complaints included Hepatitis C, carpal tunnel syndrome, fatigue, back pain and depression.  (Tr. 155).

Based upon his examination, Dr. Grant's diagnostic impression stated Plaintiff suffered:
(1) Hepatitis C, symptomatic for fatigue; (2) bilateral carpal tunnel syndrome; (3)
depression, stable on medication; and (4) lumbar strain.  (Tr. 159).  Dr. Grant noted
Plaintiff's hands displayed no signs of deformity or inflammation.  Id.  Dr. Grant further
noted Plaintiff's range of motion was normal; however, she experienced discomfort of
her lumbar spine on full flexion.  Id.  Plaintiff's gait, grip strength and fine manipulation
were all normal.  Id.  Additionally, at the time of the examination, Dr. Grant found
Plaintiff's mental status normal and that she exhibited no signs of psychosis or neurosis.
Id.

In their report, dated February 22, 2002, Johnson and Zelbovitz diagnosed
Plaintiff's condition as "Major Depression, Recurrent, Moderate Obsessive-Compulsive
Traits."  (Tr. 162).  Johnson and Zelbovitz noted Plaintiff's memory and intelligence
appeared unimpaired.  Id.  They further noted Plaintiff experienced symptoms of
depression which seemed exacerbated during her treatment for Hepatitis C.  Id.

Plaintiff offered the following relevant testimony regarding her impairments and
limitations.  She has history of depression and anxiety, for which she has been treated
with medication.  Because of the anxiety, Plaintiff avoids public places.  At the time of
the hearing, she had chosen not to receive treatment for Hepatitis C.  (Tr. 293).
However, as a result of the disease, Plaintiff experiences severe fatigue and muscle
pain.

Additionally, Plaintiff experiences leg and lower back pain after standing for more
than 10 minutes; and lower back pain accompanied by hip pain after sitting for more

than 15 minutes.  Plaintiff is capable of walking no more than 50 yards before having to rest; and, she is unable to lift any object heavier than a gallon of milk.  Id.  She is also capable of limited bending.

### C.   Disability Determination

### 1.   Definition of Disability

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § § 404.1520, 416.920.  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

### 2.   The Five Step Evaluation

First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's

impairments (considering her residual functional capacity, age, education, and past

work) prevent her from doing other work that exists in the national economy, then she is

disabled.  20 C.F.R. § 404.1520(f).

### 3.    Summary of the ALJ's Decision

In this case, at step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since December 31, 1999, the alleged onset of disability.  (Tr.

21).  At step two, the ALJ found Plaintiff has chronic Hepatitis C, arthralgias,

depression, carpal tunnel syndrome of the left wrist, and status-post release on the right

wrist.  (Tr. 19).  At step three, the ALJ found that Plaintiff's medically determinable

impairments did not meet or medically equal any of the impairments listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  Before moving to step four, the ALJ assessed

Plaintiff's residual functional capacity ("RFC").  See 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing Plaintiff's RFC, the ALJ afforded limited weight to the "Residual

Functional Capacity Questionnaire" completed by Dr. Solomon.  The ALJ noted that the

limitations described by Dr. Solomon in the questionnaire were inconsistent with the

objective radiographic evidence as well as his own patient notes.  (Tr. 20).  Additionally,

the ALJ found Plaintiff's allegations regarding her limitations not fully credible, noting a

lack of supportive evidence.  (Tr. 20, 22).  According to the ALJ, radiographic evidence

showed only mild scoliosis and mild degenerative changes in Plaintiff's lumbar spine.

There was no medical evidence that Plaintiff experienced numbness and weakness in

her right hand.  Plaintiff's mood was aided through the use of medication and she

responded well to treatment.  Her depression is characterized as mild and progress

notes suggest that it is situational.  (Tr. 21).

The ALJ determined Plaintiff retained the RFC to lift up to 20 pounds, with no

restrictions on sitting, standing or walking.  The ALJ further determined Plaintiff had

slight difficulties maintaining concentration, persistence or pace.  Based upon his

determination of Plaintiff's RFC, at step four, the ALJ further found Plaintiff's

impairments did not prevent her from doing her past work as a sales clerk.  (Tr. 22).

Accordingly, the ALJ  concluded Plaintiff was not "disabled" within the meaning of the

Social Security Act.  Id.

## III.    Discussion

### A.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence, Richardson v.

Perales, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive

if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more

than a scintilla – i.e., the evidence must do more than merely create a suspicion of the

existence of a fact, and must include such relevant evidence as a reasonable person

would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553,

1560 (11th Cir. 1995), citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)

and Richardson v. Perales, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

### B.    Issues Presented

Plaintiff presents three issues for the Courts review.  First, Plaintiff argues the

ALJ failed to set forth good cause in rejecting the opinion of her treating physician.

Second, Plaintiff argues the ALJ erred as a matter of law in concluding her impairments

do not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Specifically, Plaintiff maintains her depression and anxiety are severe enough to meet

or equal the requirements of Listings 12.04 (Affective Disorders) and 12.06 (Anxiety

Related Disorders).  Third, Plaintiff argues the ALJ's findings regarding her RFC are not

supported by substantial evidence.

In response, the Commissioner argues her final decision is supported by

substantial evidence.  The Commissioner maintains the ALJ properly considered and

weighed the medical evidence presented, including the opinion of Plaintiff's treating

physician.  The Commissioner further maintains Plaintiff failed to meet her burden in

establishing that her mental impairments meet or medically equal any of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Additionally, the

Commissioner maintains that, based upon the evidence presented, the ALJ properly

determined Plaintiff retained the RFC to return to her past work.

>        **1.        Treating Physician's Opinion**

Plaintiff argues the ALJ failed to set forth the requisite good cause for rejecting

Dr. Solomon's opinion that she is unable to perform sustained work activities.

Specifically, Plaintiff contends the primary impact of her well-documented Hepatitis C is

debilitating fatigue; and the fatigue, rather than other impairments, precludes her ability

to perform sustained work related activities.  See Doc. No. 22 at pp. 11-13; and Doc.

No. 27 at p. 1.  Plaintiff further contends the ALJ selectively considered evidence in the

record to support his findings; therefore, his flawed analysis does not provide a proper

basis to reject Dr. Solomon's opinion.

Substantial weight must be given to the opinion, diagnosis and medical evidence

of a treating physician unless there is good cause to do otherwise.  See Lewis v.

Callaghan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580,

583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments is well-supported by medically

acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the

other substantial evidence in the record, the ALJ must give it controlling weight.  20

C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report

regarding an inability to work if it is unsupported by objective medical evidence or is

wholly conclusory.  See Edwards, 937 F.2d 580 (11th Cir. 1991) (ALJ properly

discounted treating physician's report where the physician was unsure of the accuracy

of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ

may afford them such weight as is supported by clinical or laboratory findings and other

consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d

1073, 1075 (11th Cir. 1986); see also Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir.

1987).  When a treating physician's opinion does not warrant controlling weight, the ALJ

must nevertheless weigh the medical opinion based upon: (1) the length of the

treatment relationship and the frequency of examination; (2) the nature and extent of the

treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency

with the record as a whole; (5) specialization in the medical issues at issue; and (6)

other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).

However, a treating physician's opinion is generally entitled to more weight than a

consulting physician's opinion.  See Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.

1984); see also 20 C.F.R. § 404.1527(d)(2).

In this instance, the only opinion by Dr. Solomon regarding Plaintiff's fatigue is

found in the "Residual Functional Questionnaire," merely stating Plaintiff requires a day

of rest following physical activity.  The ALJ accorded limited weight to the opinion

expressed in the form on the grounds that Dr. Solomon's assessment of Plaintiff's

limitations lacked supportive evidence and was inconsistent with his own progress

notes.  Based upon its independent review of the record, the Court agrees.

The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence concerning a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  Here, the record includes evidence that Plaintiff reported periods of fatigue associated with her Hepatitis C infection.  The record also includes Dr. Grant's assessment that Plaintiff's condition was "symptomatic for fatigue."  (Tr. 159).  Absent from the record however is conclusive evidence such as clinical or laboratory findings demonstrating that Plaintiff experienced "debilitating" fatigue or a complete inability to perform sustained work related activities as a result of fatigue. Therefore, where a treating physician has made conclusory statements or statements unsupported by objective medical evidence, as Dr. Solomon has done in this case, the ALJ was entitled to discount his opinion.

Moreover, based upon the Court's review, it is clear that the ALJ was aware of his duty to accord substantial weight to Dr. Solomon's opinion unless there was good cause to do otherwise, and he carried out that duty.  The ALJ carefully reviewed the medical findings and other evidence to determine whether Dr. Solomon's statements regarding all of Plaintiff's limitations were supported.  Accordingly, the ALJ properly determined that Dr. Solomon's opinion did not warrant controlling weight and there is substantial evidence to support that determination.

### 2.    Listed Impairments/Evaluation of Mental Disorders

Plaintiff argues the ALJ erred as a matter of law by failing to provide any basis for rejecting Dr. Torres' opinion that her depression and anxiety are so severe that they

-13-

meet or medically equal Listings 12.04 and 12.06, respectively.  Plaintiff maintains the ALJ failed to properly consider the collective findings by Dr. Torres that establish her impairments "meet or may very well equal" the requirements of the Listings.

The Regulations provide a listing of impairments which are considered severe enough to prevent a person from performing gainful activity.  See 20 C.F.R. Part 404, Subpart P, Appendix 1.  By meeting a listed impairment or otherwise establishing equivalence, a claimant is presumptively determined to be disabled regardless of her age, education or work experience.  See 20 C.F.R. § 404.1511.  To "meet" a listed impairment, a claimant must have a diagnosis included in the listings and must provide medical reports documenting that the conditions meet the specific criteria of the listed impairment including the duration requirement.  See 20 C.F.R. § 404.1525(a)-(d).  To "equal" a listed impairment, the medical findings must be "at least equal in severity and duration to the listed findings."  See 20 C.F.R. § 404.1526(a).

The evaluation of disability on the basis of mental disorders requires the documentation of a medically determinable impairment, as well as consideration of the degree of limitation such impairment may impose on the individuals's ability to work.  The listings for mental disorders are arranged in eight diagnostic categories.  20 C.F.R. Part. 404, Subpart P, Appendix 1.  The criteria in paragraphs B and C of the listings for mental disorders describe those functional limitations associated with mental disorders which are incompatible with the ability to work–i.e., limitations in functional areas deemed essential to work.  A mental impairment is medically equivalent to a listed mental impairment if the medical findings are at least equal in severity and duration to

-14-

the listed findings.  20 C.F.R. § 404.1526.  An individual meeting or equaling the criteria could not reasonably be expected to engage in gainful work activity.  20 C.F.R. Part 404, Subpart P, Appendix 1.

In assessing mental disorders under the Listings, severity is assessed in terms of the functional limitations imposed by the impairment.  Functional limitations are assessed using the criteria in paragraph B of the listings for mental disorders (activities of daily living; social functioning; concentration, persistence, or pace; and ability to tolerate increased mental demands associated with competitive work).  A "marked" degree of limitation means more than moderate, but less than extreme.  A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively.  20 C.F.R. Part 404, Subpart P Appendix 1.  The Commissioner employs a technique to ensure that ALJs obtain, consider, and properly evaluate all evidence needed to evaluate mental impairment severity.  20 C.F.R. Pt. 404, Subpart P, Appendix 1.  The technique is used in connection with the sequential evaluation process.  See 20 C.F.R. §§ 404.1520a and 416.920a.

**Listing 12.04.**[2]

Plaintiff maintains Dr. Torres' findings regarding her depression, particularly

those expressed in the June 27, 2003 Psychiatric Documentation Form, "precisely

track" the provisions of Listing 12.04(C)(1) which requires:

> Medically documented history of a  chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Part 404, Subpart. P, Appendix 1, Listing 12.04.  In his decision, the ALJ

found Plaintiff suffered depression, a severe impairment within the meaning of the

Regulations, but not severe enough to meet or medically equal a listed impairment.  In

support of his findings, the ALJ specifically cited to the Psychiatric Documentation Form

in which Dr. Torres opined Plaintiff's depression caused no restriction of daily living

activities and imposed only mild difficulties in her ability to maintain social functioning as

---

[2] 12.04 *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.  The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.  A. Medically documented persistence, either continuous or intermittent, of one of the following: 1. Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activites; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; or 2. Manic syndrome characterized by at least three of the following: a. Hyperactivity; or b. Pressure of speech; or c. Flight of ideas; or d. Inflated self-esteem; or e. Decreased need for sleep; or f. Easy distractability; or g. Involvement in activities that have a high probability of painful consequences which are not recognized; or h. Hallucinations, delusions or paranoid thinking; or 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration; OR C. Medically documented history of a  chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

well as her ability to maintain concentration, persistence or pace.  The ALJ further cited

to Dr. Torres' subsequent patient notes in concluding the limitations of Plaintiff's

depression did not equal a listed impairment.

Based upon the Court's review of the entire record, the ALJ's finding that

Plaintiff's depression does not meet or medically equal a listed impairment, particularly

Listing 12.04, is supported by substantial evidence.  Dr. Torres' notes indicate Plaintiff

responded well to treatment for her depression through the use of Wellbutrin and

Lexapro.  (Tr. 264-265).  She reported increased feelings of sadness and stress

associated with situations such as her husband undergoing surgery, her treatment for

Hepatitis C infection, and family financial obligations.  Plaintiff did in fact report feeling

"more depressed" and a feeling of "going backwards" but only after discontinuing her

use of Wellbutrin.  (Tr.  265).  Additionally, at the hearing, Plaintiff testified she

responded well to the treatment, describing Lexapo as a "wonder drug."  (Tr. 288).

**Listing 12.06**[3]

Plaintiff further maintains Dr. Torres' findings regarding her anxiety "are close to

meeting the requirements of Listing 12.06(C)."  See Doc. 22 at p. 15.  In support,

Plaintiff asserts Dr. Torres opined her persistent anxiety was evidence by motor tension

and recurrent panic attacks, precluding her ability to function outside her home.

For a claimant to establish her impairment matches a listed impairment, the

impairment must meet all of the specified medical criteria.  Sullivan v. Zebley, 493 U.S.

521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter

how severe, does not qualify."  Id.  Under Listing 12.06, the required level of severity is

met when the requirements of both paragraphs A and B are satisfied, or when the

requirements of paragraphs A and C are satisfied.  Based upon the Court's review,

neither Dr. Torres' June 27, 2003 report nor his progress notes contain findings

evidencing the required level of severity necessary to meet the Listing.  Additionally, the

---

[3]12. 06 *Anxiety Related Disorders*: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied. A. Medically documented findings of at least one of the following: 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning; or 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or 4. Recurrent obsessions or compulsions which are a source of marked distress; or 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; AND B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration. OR C. Resulting in complete inability to function independently outside the area of one's home.

record, considered in its entirety, fails to support a finding that Plaintiff's impairment

meets or equals the requirements of Listing 12.06.

In sum, the ALJ found no evidence of functional limitations manifested at either

Listing 12.04 or 12.06.  Moreover, based upon the Court's review, his decision is

supported by substantial evidence.  Accordingly, the Court rejects Plaintiff's argument.

### 3.       The ALJ's Determination of Plaintiff's RFC

Plaintiff argues the ALJ's finding that she retains the RFC to perform her past

work as a sales clerk is not supported by substantial evidence.  Plaintiff maintains the

ALJ erred in rejecting evidence from both treating and consulting physicians regarding

her limitations.  Specifically, Plaintiff challenges the ALJ's determination of her RFC in

light of the RFC assessments provided by non-examining, medical consultants.  Plaintiff

further maintains the ALJ erred by failing to consider the mental and physical demands

of her past work.

RFC is an administrative assessment of the extent to which an individual's

medically determinable impairments, including any related symptoms, such as pain,

cause physical or mental limitations on her ability to do work-related activities.  See 20

C.F.R. § 404.1545.  The focus of this assessment is on all relevant evidence,

particularly medical evidence, regarding  the claimant's condition and any resulting

limitations.  Id.  If a claimant retains the ability to perform the type of work she has

performed in the past, the Regulations dictate that she be found not disabled.  Plaintiff

bears the burden of establishing she is unable to perform the activities required of her

past work.  Jackson v. Bowen, 801 F.2d 1291, 1292-3 (11th Cir. 1986).

Here, in a Physical Functional Capacity Assessment completed on March 27, 2002, consulting physician Cristina B. Rodriguez, M.D. ("Dr. Rodriguez") opined Plaintiff could: (1) stand or walk for up to 4 hours per day; (2) sit for up 6 hours per; (3) lift 10 pounds frequently and (4) lift 20 pounds occasionally.  (Tr. 178).  Dr. Rodriguez further opined Plaintiff's ability to work was limited by chronic pain and fatigue; however, Plaintiff was capable of performing sedentary work at that time.  (Tr. 182).

The ALJ determined Plaintiff retained the RFC to "lift up to 20 pounds, with no restrictions on sitting, standing or walking and only slight difficulties maintaining concentration, persistence or pace, " thereby meeting the requirements of light work. See 20 C.F.R. § 416.967.  The ALJ noted that diagnostic tests showed Plaintiff experienced mild scoliosis and mild degenerative changes in her lumbar spine.  He found no medical evidence showing Plaintiff experienced muscle spasms or numbness and weakness in her right hand.  The ALJ further noted he found no evidence of an impairment or combination of impairments that would generally be associated with Plaintiff's ability to sit, stand or walk.  With respect to Plaintiff's depression, the ALJ noted that it posed mild limitations on her ability to work and appeared situational. Based upon his assessment of Plaintiff's RFC, the ALJ further determined Plaintiff was capable of performing her past work as a sales clerk, which falls within the range of light work.

In this case, the ALJ properly based his RFC finding on all of the medical opinions assessing the severity of Plaintiff's impairments as well as Plaintiff's own testimony regarding the duties of her past work.  Moreover, Plaintiff's testimony,

information she provided in her work history report, and the Dictionary of Occupational

Titles consistently indicate that Plaintiff's past work as a sales clerk did not require work

activities precluded by her RFC.  Additionally, the ALJ specifically found that non-

exertional limitations did not preclude Plaintiff's ability to perform this job.  Accordingly,

Plaintiff has not met her burden of proof, and the ALJ properly found her not disabled.

## IV.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**

pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment

consistent with this opinion and, thereafter, to close the file.


**DONE AND ORDERED** in Chambers in Jacksonville, Florida this 9th day of

November, 2005.



_Monte C. Richardson_

**MONTE C. RICHARDSON**
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party

-21-